IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SITTIPHONE PHENGSENGKHAM | § | |
| | § | |
| v. | § | 2:10-CV-277 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY**
**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant SITTIPHONE PHENGSENGKHAM has filed with this Court a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. On August 9, 2012, the Court conducted an evidentiary hearing on this motion. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge is of the opinion defendant is not entitled to relief and recommends the motion to vacate, set aside, or correct sentence be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

In early 2007, defendant Sitthiphone "Teddy" Phengsengkham was arrested after a multi-year investigation indicated he played a major role in a local narcotics trafficking ring. *United States v. Phengsengkham*, 2:07-CR-065(1), "Criminal Complaint," doc. 1 (filed Feb. 14, 2007); "Warrant for Arrest," doc. 28 (filed Feb. 15, 2007). Defendant was indicted and pled not guilty. After a jury trial, he was found guilty of conspiring to commit a drug offense and conspiring to launder money. *Id.*, Transcript of Jury Trial ["Transcript"], vol. II, doc. 1031, pgs. 606-07 (filed Feb. 12, 2008). Defendant received sentences of 293 months' and 240 months' incarceration, respectively, such sentences to run concurrently. The conviction was affirmed on direct appeal. *Id.*,

Opinion of the Fifth Circuit Court of Appeals, doc. 1066 (filed in the 5th Cir. July 31, 2009, filed in the District Court Aug. 31, 2009). Defendant's 28 U.S.C. § 2255 motion followed.

## II.
## DEFENDANT'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, defendant contends,

1. He received ineffective assistance of counsel when his attorney,
    a. gave incorrect advice during the pre-trial stage concerning defendant's potential sentence and whether to enter into a plea agreement with the government;
    b. failed to seek a motion to sever; and
    c. failed to present mitigating evidence during sentencing;

2. His due process rights were violated because the prosecution withheld exculpatory impeachment evidence concerning one of its witnesses; and

3. He did not launder money as defined by the Fifth Circuit in *Garland v. Roy*, 615 F.3d 391 (5th Cir. 2010).

At the August 9, 2012, evidentiary hearing, defendant expressly abandoned claims 1b, 1c, 2, and 3. The only remaining claim is the ineffective assistance of counsel claim regarding counsel's pre-trial performance in investigating defendant's leadership role in the narcotics case and the advice counsel gave defendant regarding whether to plead guilty or go to trial and whether defendant Phengsengkham's decision to go to trial was knowingly made.

## III.
## MERITS

### A. Proving Ineffective Assistance of Counsel

The proper standard for judging a defendant's contention that counsel rendered ineffective assistance is enunciated in *Strickland*. Under the two-pronged *Strickland* standard, a defendant must

show counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.*, 104 S.Ct. at 2064. Counsel's performance is viewed from counsel's perspective at the time of trial, not from hindsight. *Id.*, 104 S.Ct. at 2064. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*, 104 S.Ct. at 2064. A defendant asserting his attorney's performance was ineffective "has the burden to prove ineffectiveness by a preponderance of the evidence." *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000).

In order to meet the *Strickland* standard, it is not enough to merely show deficient performance by counsel. A defendant must also show counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To establish this prong, a defendant must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *see Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993).

There are two facets to defendant Phengsengkham's claim of ineffective assistance of counsel: (I) counsel's pre-trial investigation of the evidence of whether defendant acted in a leadership role in the criminal organization and (ii) counsel's advice about defendant's potential sentencing range if defendant pled guilty and counsel's advice whether defendant should or should not plead guilty.

### B. Counsel's Failure to Investigate

Defendant was charged with, and eventually found guilty of, (1) conspiracy to commit a drug offense and (2) conspiracy to launder money. Pursuant to the United States Sentencing Guidelines, a conviction for conspiracy to commit a drug offense involving drugs in the amount involved in this case carries a base offense level of 38.[1] U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1(a)(3), (c)(1) (2006). Also, pursuant to Sentencing Guideline section 3B1.1(a), the base offense level is increased by an additional 4 levels if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *Id.* § 3B1.1(a).

The Presentence Report prepared after defendant's guilty plea calculated defendant's base offense level at 38, and included an additional 4 points for acting in a leadership role, resulting in a total offense level of 42. *United States v. Phengsengkham*, 2:07-CR-065(1), "Presentence Report," doc. 1037, pgs. 23-24 (Feb. 13, 2008). An offense level of 38 with defendant's criminal history category of 1 carries a guideline sentencing range of between 235 and 293 months' incarceration

---

[1] Because defendant was convicted of two counts stemming from one course of conduct, the two offenses were grouped together for sentencing purposes. *See* U.S.S.G. § 3D1.2©). Consequently, defendant's base offense level applicable to both offenses was the highest offense level of the most serious of the counts. U.S.S.G. § 3D1.3(a). The highest base offense level came from the conspiracy to commit a drug offense conviction. Based upon the amount of drugs to which defendant was linked, defendant faced a base offense level of 38. *Id.* § 2D1.1©).

while an offense level of 42 carries a sentencing range of between 360 months to life. U.S.S.G. cpt. 5, pt. A, "Sentencing Table" (Nov. 2006).

Both defendant and his attorney filed objections to the 4-level leadership enhancement, after which the Presentence Report was modified by the probation office to delete the 4-level increase, resulting in a total offense level of 38. *Id.*, "Addendum to the Presentence Report," doc. 1037-2, pg. 2. The District Court, in sentencing defendant, adopted the guideline calculations in the Presentence Report and Addendum thereto. *Id.*, Sentencing Transcript, doc. 1032, pg. 3. The judge then sentenced defendant to a term of 293 months' incarceration for the conspiracy to commit a drug offense conviction, the maximum guideline sentence for an offense level of 38 and a criminal history category of 1. The Court also imposed a term of imprisonment of 240 months on the conspiracy to launder money conviction, which is within the guidelines range for an offense level of 38 and which is the statutory cap for that offense. *See* U.S.S.G. cpt. 5, pt. A, "Sentencing Table;" 18 U.S.C. § 1956(a)(1).

> In his first allegation of ineffective assistance of counsel, defendant avers,
>
> counsel Roper advised Movant that his base offense level would start at level 42 if Movant pled guilty to government's plea offer. Counsel misinformed Movant as to his exposure because without the leadership role Movant's exposure would have been at base offense level 38. Counsel Roper fail [sic] to investigate prior to advising Movant as to a decision of whether to accept the government's plea offer or to go to trial.

("Supporting Memorandum for Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Filed Pursuant to Title 28 U.S.C.S. [sic] § 2255," doc. 16-2 [hereinafter "Memo"], pg. 4 (Feb. 2, 2011)). Defendant contends his attorney failed to investigate the extent of defendant's leadership role and that if counsel had engaged in such an investigation, "he would have found that none of the government's witnesses could have provided any evidence that Movant was ever in a

leadership position in the conspiracy." *Id.* Defendant also avers he lost the benefit of the 3-level reduction for acceptance of responsibility typically accompanying a guilty plea. Defendant concludes that had he pled guilty, his total offense level would have been 35, which carries a sentencing range of 168 to 210 months, as opposed to a level 38, which carries a range of 233 to 293 months or a level 42, which carries a range of 360 months to life.

1. Deficient Performance

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). An ineffective assistance of counsel claim based on speculation or conclusory rhetoric will not warrant relief. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (establishing a court cannot consider bald assertions, unsupported by anything in the record, to be of probative evidentiary value); *see United States v. Stracener*, 959 F.2d 31, 33 (5th Cir. 1992) (applying *Ross* analysis to determination of a 28 U.S.C. § 2255 motion).

Defendant does not "allege with specificity" how counsel failed to perform a thorough investigation for plea bargaining purposes nor does he allege what such an investigation would have revealed. *See Green*, 882 F.2d at 1003. Defendant's contention is conclusory in that it fails to detail exactly whose testimony counsel could have predicted and how that testimony would have been

beneficial to defendant.[2] In fact, defendant argues as if there was some piece of evidence which would have conclusively established he was not a leader in the narcotics trafficking ring and that counsel should have discovered it. Yet, given the opportunity to do so, defendant has not only failed to demonstrate the existence of any such piece of evidence or pieces of evidence but he has failed to even allege what such evidence would have been. The Court is unable to grant any relief in this 28 U.S.C. § 2255 proceeding when it has only speculative and conclusory allegations before it. *See id.*; *Ross*, 694 F.2d at 1012.

Additionally, the testimony of defendant's trial counsel rebuts defendant's claim. At the evidentiary hearing, defendant Sitthiphone Phengsengkham and his trial attorney, Mr. Dean Roper, testified. Regarding his pre-trial investigation, Mr. Roper testified he went through discovery in the case by evaluating several audio recordings and transcripts of recorded phone conversations between the various co-defendants, including defendant Phengsengkham; surveillance reports of defendant's activities; and the anticipated testimony of co-defendants. Based upon this investigation, Mr. Roper became aware of statements by co-defendants indicating defendant Sitthiphone Phengsengkham was the "head guy," who controlled everything and managed the entire conspiracy.[3] In response to this testimony, defendant did not offer any evidence either confirming or invalidating Mr. Roper's testimony. Thus, the Court has before it evidence from Mr. Roper indicating he did perform a proper investigation regarding defendant's role in the narcotics trafficking ring and no evidence from

---

[2] To the extent defendant contends counsel's pre-trial investigation should have revealed the entire case presented by the government *at trial*, such a contention is unrealistic. Even with an open file policy by the government and additional independent investigation, everything presented and testified about at trial is not going to be discovered through even the most diligent pre-trial work by defense counsel.

[3] Also, in investigating the charges defendant Phengsengkham told Mr. Roper that the money to which defendant was linked was not from drug trafficking but was rather from his promotions business. Following up, Mr. Roper contacted the people in Dallas who defendant said would verify his version of events, but once contacted, these persons stated defendant's story was incorrect and they were unwilling to testify on defendant's behalf.

defendant to the contrary. The Court cannot conclude defendant has met his burden of proof to demonstrate deficient performance. *See Montoya*, 226 F.3d at 408.

### 2. Prejudice

Moreover, even if there had been some deficiency in counsel's pre-trial investigation, defendant has failed to establish how that deficiency prejudiced him. The Supreme Court has established that, in cases where the defendant alleges ineffective assistance of counsel based upon a failure to investigate, the prejudice determination is based on whether the evidence counsel would have discovered upon a proper investigation "would have led counsel to change his recommendations as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The testimony of Mr. Roper and defendant indicates counsel consistently advised defendant to plead guilty. Defendant contends a proper investigation would have led counsel to conclude the proper offense level was 35. If Mr. Roper's advice was to plead guilty at level 42, then his advice, presumably, would also have been to plead guilty at level 35. Defendant has failed to show how a proper investigation would have led Mr. Roper to "change his recommendations as to the plea." *See Hill*, 474 U.S. at 59, 106 S.Ct. at 370. The bigger issue, however, is not whether Mr. Roper's advice to plead guilty would have changed, but is whether his advice regarding defendant's potential offense level would have changed defendant's ultimate determination to plead not guilty and proceed to trial. This issue is discussed in detail in section III.C.2 below.

### *C. Counsel's Advice Regarding Potential Sentencing Range*

Defendant next avers counsel misinformed him as to the possible sentencing range he would have faced if he pled guilty. Specifically, defendant contends counsel strictly advised him that if

he pled guilty he would be facing an offense level of 42,[4] which carries a sentencing range of 360 months to life. *See* U.S.S.G. cpt. 5, pt. A, "Sentencing Table." Defendant reasoned that because he would face the same sentencing range if he were found guilty at trial, there was no benefit to pleading guilty. Resolving he had nothing to lose, defendant proceeded to trial.

1. Deficient Performance

Pursuant to *United States v. Rivas-Lopez*, 378 F.3d 353, 359 (5th Cir. 2012), this issue was addressed at the evidentiary hearing. Defendant testified he never saw any written plea agreement from the government. He recalled there was a meeting where defendant and his wife, defendant's brother and his wife, defendant's mother and father (both of whom were co-defendants in the case), and all of their attorneys met. Defendant recalled hearing, at that meeting, that he was facing an offense range of 42 (a base level of 38 plus an additional 4 levels for acting in a leadership role). Defendant stated he never had a separate meeting with counsel Roper to discuss how that guideline range was determined, he was never shown the sections allowing for the 4-level increase for leadership or the possible 3-level decrease for acceptance of responsibility. He further testified he never received any written correspondence from Mr. Roper regarding the application of the Sentencing Guidelines to his case. Defendant contends he declined to plead guilty because he did not see the point if he was going to face an offense level of 42 whether he pled guilty or went to trial.

Counsel Roper testified there was no written correspondence between him and the defendant regarding defendant's potential sentence and whether defendant should plead guilty because counsel met with defendant face-to-face on multiple occasions to discuss those issues. Counsel testified he

---

[4] Defendant reasons counsel's failure to discover whether defendant could be assessed a 4-level increase to the base offense level based upon his role as a leader in the organization resulted in counsel's advise that defendant was facing an offense level of 42.

and defendant discussed all of the potential sentence ranges defendant faced depending on the various possibilities. Specifically, Mr. Roper stated he did advise defendant that he could, *potentially*, be subject to a 4-level increase for acting in a leadership role, resulting in a total offense level of 42 (if defendant went to trial) and 39 (if defendant pled guilty). Mr. Roper testified that, although he discussed the possible 4-level increase for acting in a leadership role, he did so in theoretical terms and in the context that the 42-level assessment was far from certain and was but one of many potential sentencing levels possibly applicable. Counsel testified he also advised defendant about the potential 3-level reduction in offense level if defendant pled guilty, which could have yielded an offense level of 35 (assuming there was no leadership role assessment). According to Mr. Roper, he and defendant met, face-to-face, on several occasions and discussed each possible offense level. At these meetings, Mr. Roper stated he went through the Sentencing Guidelines Manual with defendant, discussing the implications of each potential offense level, as is his standard practice in every case. Counsel testified he also discussed the possibility of defendant cooperating with the government in order to receive an additional decrease in his sentence. Defendant, however, refused to cooperate with the government, even after the guilty verdict. Mr. Roper testified his advice regarding defendant's potential sentence was given with the explicit caveat that they would not know anything for certain about defendant's sentencing range until the Presentence Report was completed and that everything was, at that point, theoretical. According to Mr. Roper, defendant refused to plead guilty because he steadfastly claimed his innocence, and he refused to cooperate with the government because (in line with his claim of innocence) he had no knowledge to share with the government.

Defendant has failed to show deficient performance by his lawyer. Defendant's claim that

Mr. Roper unequivocally advised him that if he pled guilty he would receive an offense level of 42 is implausible and effectively rebutted by evidence adduced at the evidentiary hearing. As stated earlier, defendant's testimony was equivocal and involved many instances where defendant simply did not recall important facts.[5] In comparison, Mr. Roper's testimony was certain and in line with reasonable professional assistance. To the extent it is necessary, the Court finds Mr. Roper's detailed testimony regarding the advice he gave the defendant is credible and reliable while defendant's testimony is not.

Moreover, it does not make sense that Mr. Roper, who has been a criminal defense attorney for many years, would advise defendant he would face a firm offense level of 42 regardless of whether he pled guilty or went to trial. Such a representation is patently incorrect and is, in fact, illogical. An experienced criminal defense attorney would (in line with Mr. Roper's testimony) know a defendant would face many different potential sentence ranges depending on various factors in the case, including the acceptance of responsibility factor. Further, it is well-established that no one actually knows with certainty what a defendant's sentencing range will be until the Presentence Report is completed and adopted by the Court. Defendant's contention that Mr. Roper unequivocally told him he would receive an offense level of 42 regardless is not plausible and is contrary to the highly deferential presumption that counsel Roper's performance fell within the wide range of reasonable professional assistance, which would have been to advise defendant on the various sentencing possibilities he faced, as Mr. Roper testified he did. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's testimony that he advised defendant, based upon his investigation,

---

[5] As discussed in more detail below, defendant also admitted making untrue statements in pleadings filed with the Court, such as stating in his pleadings that he was actually innocent of the charges but in reality was not actually innocent and would have been open to a plea offer if it was at an acceptable offense level.

that defendant could face a potential offense level of 42 was valid and was reasonable. After all, at the conclusion of the trial defendant *was* assessed the additional four points for acting in a leadership role. The fact that the probation officer initially made such an assessment indicates there was some basis for it. The fact that counsel Roper was successful in his objection to that leadership assessment does not mean the assessment was meritless. Defendant has failed to demonstrate deficient performance because he has failed to establish counsel advised him he would face a sentencing level of 42 whether he pled guilty or went to trial.

## 2. Prejudice

Additionally, defendant has not shown prejudice. In cases where a defendant alleges ineffective assistance of counsel led to the rejection of a plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012); *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012).

Defendant Phengsengkham has not shown any of the above elements. In particular, he has not shown the first element, i.e. that he would have accepted the plea. *See Lafler v. Cooper*, 132 S.Ct. at 1385. At the hearing, defendant stated that had he known he would have been assessed an offense level of 35, he would have pled guilty. In contrast, counsel Roper testified defendant steadfastly refused to accept any plea because he continually asserted his innocence. In line with Mr. Roper's testimony, defendant began his "Traverse to Government's Response," with the

following statement:

> Sitthiphone Phengsengkham, herein Teddy, has from the start of this criminal charge claimed his innocence to any dealing in drugs. First, Teddy, nor [sic] any co-defendants, nor any witnesses claimed to have sold or bought any drugs to or from Teddy; second, the affidavit of Itthison Phengsengkham is evidence that Teddy clearly was not a part of the drug deals attributed to his brother Itthison, this [sic] is implied actual innocence . . .

(doc. 20, pg. 1 (filed Feb. 16, 2011)). When cross-examined about the differing statements, defendant first testified the Traverse was written by a jailhouse lawyer and that he did not understand what the Traverse said. Upon further questioning, however, defendant indicated he did understand what the Traverse said and stated he signed the document because he felt making an assertion of actual innocence was necessary for him to obtain relief in the case.

Either defendant asserted his innocence from the initiation of the criminal case and refused to pled guilty for that reason or he wanted to plead guilty but did not because of Mr. Roper's alleged misadvise concerning his potential offense level. The Court finds the first of these scenarios is more believable. This determination is in line with the Court's prior finding regarding Mr. Roper's advice of defendant's multiple possible sentencing ranges and the Court's finding that Mr. Roper's testimony is credible. At the evidentiary hearing, defendant, for the first time ever, testified he was not asserting actual innocence and would have in fact pled guilty. Based upon the circumstances in which this contention was made[6] and the strength of Mr. Roper's testimony, the Court cannot find defendant would have accepted the plea. *See Lafler v. Cooper*, 132 S.Ct. at 1385. Additionally,

---

[6] Defendant admitted to misrepresenting his actual innocence to the Court in his Traverse. Whether this misrepresentation was intentional or due to the fault of the jailhouse writ writer who assisted defendant with his pleadings, such a sudden and significant change in defendant's story is questionable, especially when the change is necessary for defendant to obtain relief in this case. The evidence provided by defendant on this ground of error falls far below the level of "reasonable probability" this Court must have in order to find prejudice. *See Creel*, 162 F.3d at 395.

defendant has done nothing to meet any of the other elements set forth in *Lafler* for establishing prejudice in a case such as this one. *See id.*

It has not been definitely established that a firm plea offer was available. The Court has addressed the issues in this case assuming the government would have agreed to allow the defendant to plead guilty to one count of the indictment. If such a plea agreement had been available there is no reason to believe the District Judge would not have accepted the plea. The Court does not address these elements in detail in light of the Court's finding that defendant persisted in his assertion of innocence and would not have pled guilty.

Because defendant has failed to demonstrate how counsel was deficient or how he suffered prejudice as a result of counsel's deficient performance, this claim of ineffective assistance of counsel is meritless. *See Lafler*, 132 S.Ct. at 1385; *Frye*, 132 S.Ct. at 1408; *Creel*, 162 F.3d at 395.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the 28 U.S.C. § 2255 motion filed by defendant SITTHIPHONE PHENGSENGKHAM be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 31st day of August 2012.

*[signature]*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).